**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHEENA BAILEY** **O/B/O M.J.B.,** | **CIVIL ACTION** |
| **VERSUS** | **NO:   15-5073** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "A" (4)** |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Plaintiff, Sheena Bailey's ("Ms. Bailey") request, on behalf of her son, M.J.B. ("M.J.B."), for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI, 42 U.S.C. § 1382c.

The matter was referred to the undersigned pursuant to Title 28 U.S.C. § 636(b) and Local Rule 73.2(b) for the submission of Proposed Findings and Recommendations.

**II.    Factual Summary**

On October 7, 2015, the claimant, Sheena Bailey ("Bailey"), filed this appeal on behalf of her minor son, M.J.B., an eleven-year-old child who is allegedly disabled from Personality Disorders and ADHD.  R. Doc. 10, p.1.

Bailey filed the application for benefits on July 23, 2013, and the application was denied on February 25, 2014.  R. Doc. 9-3, Tr. 46; R. Doc. 9-3, Tr. 56.  On March 17, 2014, Ms. Bailey filed a request for a hearing, which took place before Administrative Law Judge ("ALJ") Glynn F. Voisin on November 12, 2014. R. Doc. 9-4, Tr. 60; R. Doc. 9-2, Tr. 37.

On December 2, 2014, the ALJ concluded that M.J.B. was not disabled under the Social Security Act. R. Doc. 9-2, Tr. 31.   He found that M.J.B. suffered from Attention Deficit Hyperactivity Disorder (ADHD) and Conduct Disorder, both medically determinable, "severe" impairments which posed more than slight limitations of functioning. R. Doc. 9-2, Tr. 23. However, he also found that statements by M.J.B.'s mother regarding his intensity, persistence and limiting effects of M.J.B.'s symptoms were not entirely credible based on the medical evidence presented. R.Doc. 9-2, Tr. 24.   Therefore, he found that M.J.B.'s impairments neither singly, nor in combination, met or equaled the criteria of any of the listed impairments at 20 C.F.R. § 404. Supbpt.P., app.1.   R. Doc. 9-2, Tr. 23. Bailey appealed the finding and the Appeals Council affirmed the ALJ's Decisions. R. Doc. 9-2, Tr. 2. Bailey now seeks review of the ALJ's decision in this Court.

In her brief, Ms. Bailey alleges that M.J.B. should be awarded disability, because she provided sufficient evidence, M.J.B. still receives services from Family Care, and M.J.B. is still in Special Ed.  (R.Doc. 10, P. 1).   In a separate statement on July 21, 2015, Ms. Bailey listed M.J.B.'s special needs to include the following: his inability to distinguish his right from his left, to dress himself, to read or spell well, to tie his shoes, or to count money; his dyslexia and ADHD diagnosis; his use of an attendant while riding the Special Education bus; his need for mental health care; his fear of sleeping in his room alone; and his need for medication.  R. Doc. 9-2, Tr. 11.   In that statement, Ms. Bailey also stipulated that, relative to the six domains used to determine functional equivalence in children outlined in 20 C.F.R. § 416.926(b)(1), M.J.B.  experienced limitations in his ability to:  complete tasks; interact and relate with others; move about and manipulate objects; and care for himself.  R. Doc. 9-2, Tr. 11.  Based on her brief and her statement, this Court infers

that Ms. Bailey objects to the ALJ's decision and rationale in determining that M.J.B. was not eligible for disability.

The Commissioner contends that Ms. Bailey's appeal failed to state a claim upon which relief could be granted and that the evidence of record submitted by Bailey does not support Ms. Bailey's allegation that her son meets the listing level requirements. R. Doc. 11, P. 3-4. The Commissioner further contends that even if Ms. Bailey's brief did comport with the Scheduling Order by providing evidence to support her claim that her son was disabled, her complaint should be dismissed, because she also failed to demonstrate that the ALJ's decision was not substantiated by supporting evidence.  R. Doc. 11, p. 4.  The Commissioner argues that the ALJ considered the relevant listings, as well as M.J.B.'s functional assessment.

## III.   <u>Standard of Review</u>

The role of this Court on judicial review under 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards when evaluating the evidence.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  The Court cannot re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary.  *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981).  If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion.  It is more than a mere scintilla and less than a preponderance."  *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).  Such evidence must do more than create a suspicion of

the existence of the fact to be established. *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Id.*

To receive disability benefits, a claimant must be "disabled" as defined by the Social Security Act ("SSA"). *See* 42 U.S.C. § 423(a)(1)(D) and 42 U.S.C. § 1382(a). The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

To determine a child's disability, the Secretary uses a multistep analysis for determining disability: (i) the child must not be performing substantial gainful activity; (ii) the child must have a medically determinable impairment(s) that is severe; (iii) the impairment(s) must meet, medically equal, or functionally equal any of the any of listed impairments of 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. § 416.924(d)); and, (iv) that impairment must meet the durational requirement. *See* 20 C.F.R. § 416.924(a)-(d).

**IV.**     **Analysis**

    **A.**     **Failure to State a Claim**

The Commissioner alleges that, Ms. Bailey made no specific claims challenging the ALJ's ruling or rationale, when she merely stated in her brief, "I have provided all of the evidence there

is.  Also, [M.J.B.] receives services from Family Care.  Still in Special Ed."  R. Doc. 11, P. 3-4.

The Commissioner further contends that Bailey's failure to state specific objections to the ALJ's

considerations or conclusions should result in automatic dismissal for failure to state a claim under

the *Twombly/Iqbal*[1] standard.  R. Doc. 11, p. 3-4.  The Commissioner does concede that courts

should construe claims made by *pro se* claimants more liberally, however "[e]ven a liberally

construed *pro se*…claimant must set forth facts giving rise to a claim on which relief can be

granted." R. Doc. 11, P. 4.

　　While it is true that *pro se* complaints must "set forth facts giving rise to a claim on which

relief may be granted," *Johnson v. Atkins,* 999 F.2d 99, 100 (5th Cir.1993), the Court notes that

*pro se* complaints are held to "a lower standard than formal pleadings drafted by attorneys."

*Washington v. E. Baton Rouge Parish Sch. Sys.,* 471 F. App'x 306, 306 (5th Cir. 2012) (citing

*Miller v. Stanmoore*, 636 F.2d 986, 988 (5th Cir. 1981)). Here, Bailey's complaint on behalf of her

son alleges that the ALJ erred in his decision and sought review of that decision. R. doc. 1, p. 1.

Moreover, Bailey alleges that her child was diagnosed with "ADHD," depression, and a learning

disorder. *Id.* at p. 2. Bailey stated that her child was placed into a special education program as

well as received counseling, therapy, and psychiatric care. *Id.* Given the liberal approach taken to

*pro se* complaints, the Court finds that these allegations sufficiently provide enough information

to be plausible on their face and "nudged [the] claims across the line from conceivable to

plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although Ms. Bailey's *pro se* brief did not comport with the guidelines set forth by the Court's briefing order (R. Doc. 5), this Court will proceed with an analysis of the ALJ's decision. Because of Ms. Bailey's general objections to the ALJ's findings, this Court will review the ALJ's decision to determine whether there was substantial evidence to find that M.J.B. was not disabled.

###    B.    Disability Determination

Broadly construed, the Court understands Bailey's complaint to assert that the ALJ's decision was not based on substantial evidence because her child has been diagnosed with ADHD, depression and a learning disability. R. Doc. 1, p. 2. While not listed in her complaint, in her appeal of the ALJ's decision to the Appeals Council, Bailey seems to suggest that M.J.B. had difficulty in four of the six domains considered in determining whether a child's impairment is the functional equivalent to a listed impairment. R. Doc. 9-2, Tr. 11. As such, Bailey appears to take issue with the ALJ's functional equivalency determination. However, the Commissioner contends that the ALJ properly determined that M.J.B.'s impairments did not meet, medically equal, or functionally equal the requirements of any of the listed impairments. R. Doc. 11, p. 4-5.

As part of determining if a child is disabled, as discussed above, the Secretary must determine if the child's severe impairment(s) meet, medically equal, or functionally equal any of the listed impairments of 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.924(d). There are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

To be functionally equal to a listing and thus of listing-level severity, the child must have "marked" limitations in two of the six domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). *Taylor v. Clovin*, No. 15-7169, 2016 WL 6304688, at *2 (E.D. La. Oct. 11, 2016) (North, M.J.). A child has a marked limitation in a domain if the child's impairment "interferes seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The marked limitation is "more than moderate" but "less than extreme." *Id.* By comparison, a child has an extreme limitation in a domain if the child's impairment "interferes *very seriously* with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added). While an extreme limitation is more than a marked limitation and reserved for the "worst limitations," an extreme limitation "does not necessarily mean a total lack or loss of ability to function." *Id.*

In evaluating each domain to determine the extent of any limitations, the Commissioner is to consider: (1) the activities the child is able to perform; (2) the activities the child is not able to perform; (3) the child's activities that are limited or restricted compared to other children who do not have the child's impairment(s); (4) whether the child has difficulty with his/her activities-at home, in childcare, at school, or in the community; (5) whether the child has difficulty independently initiating, sustaining, or completing activities; and (6) what kind of help the child needs to do his activities, how much help, and how often he/she needs help. 20 C.F.R. § 416.926a(b)(2).

In his decision, the ALJ determined that M.J.B. was not engaged in substantial activity and had the following severe impairments: ADHD and Conduct Disorder. R. Doc. 9-2, Tr. 23. However, the ALJ determined that M.J.B. did not meet, medically equal, or functionally equal any

of the listed impairments. *Id.* In particular, the ALJ considered Listings 112.11 (ADHD)[2] and 112.08 (personality disorder).[3] For the ALJ's functional equivalency determination, the ALJ determined that M.J.B. only had a marked limitation in acquiring and using information. *Id.* at Tr. 27. In the other five functional equivalence domains, the ALJ found that M.J.B. had less than a marked limitation or no limitation. *Id.* at Tr. 28-31. At this stage, the Court notes that two domains of the functional equivalence warrant closer inspection: acquiring and using information and interacting with others.

### 1. Acquiring and using information;

The Commissioner contends that the ALJ properly concluded that M.J.B. had marked limitations in acquiring and using information, and that those limitations were not extreme. (R.Doc. 11, P. 5).

Specifically regarding this domain, the ALJ noted that M.J.B.'s Teacher Questionnaire indicated that in the functional domain of acquiring and using information M.J.B. had three very serious problems and one serious problem. R. Doc. 9-2, Tr. 27. *See* R. Doc. 9-6, Tr. 137. Additionally, the ALJ noted that M.J.B. is below grade level, cannot really read, and is working on basic words. R. Doc. 9-2, Tr. 27.

In evaluating this domain, courts are asked to consider how well an individual acquires or learns information and how well that individual is able to use the information they have learned. 20 C.F.R. § 416.926a(e)(3)(g).  School age children from age six years to 12 years should be able

---

[2] Attention Deficit Hyperactivity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

[3] Personality Disorders: Manifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness.

to "read, write, and do math, and discuss history and science". 20 C.F.R. § 416.926a(e)(3)(g)(2)(iv). They should be able to demonstrate this ability both in school and at home through "reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions…reading street signs, telling time, and making change." *Id.* The child should also be able to use increasingly complex language to share information and ideas with individuals or groups.

Here, the ALJ's determination was substantially justified and used the correct legal standard. In reviewing the record, the evidence demonstrates that M.J.B. experiences slightly marked limitations in his ability to acquire and use information. When M.J.B.'s teacher was asked about M.J.B.'s ability to acquire and use information through a teacher questionnaire, she indicated that there were no areas in which M.J.B. did not have a problem. R. Doc. 9-6, Tr. 137. In particular, she indicated that M.J.B. had a very serious problem: understanding school and content vocabulary; reading and comprehending written material; and expressing ideas in written form. *Id.* She further stated that M.J.B. had a serious problem applying problem-solving skills in class discussions. *Id.* She further went on to state that M.J.B. had obvious problems comprehending oral instructions; comprehending and doing math problems; understanding and participating in class discussions; learning new material; and recalling and applying previously learned material. *Id.*

Additionally, in a functional report completed by Bailey, she indicated she was unsure of whether M.J.B.'s ability to progress in learning was limited. However, she did indicate that M.J.B. has difficulty: reading simple words; reading and understanding simple sentences, story books or magazines; printing some letters or his name; writing in script; writing a simple story with 6-7

sentences; adding or subtracting numbers greater than 10; knowing the days of the week/months of the year; understanding money or making correct change; and telling time. R. Doc. 9-6, Tr. 107.

M.J.B. also underwent an individual evaluation for an Individual Education Program ("IEP") in early 2014. In a total of nine (9) screening areas, that evaluation determined that M.J.B. was only at risk under the educational screening. R. Doc. 9-6, Tr. 167.  The assessment further noted that M.J.B.'s reading and writing capabilities were at a kindergarten level, and his math function was at a first grade level.  *Id.* at Tr. 171.   At the time of this assessment, M.J.B. was in the second grade. *Id.* at Tr. 174.

M.J.B.'s IEP assessment also included the Woodcock-Johnson Psychological-Education Battery Test.  The Woodcock-Johnson III test is not determinative of his mental status but is a test used to assess academic achievement.  *See Green v. Astrue,* No. 09-1098, 2011 WL 1440363 *6 (M.D. La. Feb. 15,2011). M.J.B. scored well in the math problem solving and calculation components, scoring 1 standard deviation and .2 standard deviations below, respectively. However, he did perform worse on the language components, wherein he scored 2.6 standard deviations below in basic reading; 3.07 standard deviations below in reading comprehension; and 2.47 standard deviations below in written expression.

Test scores alone are not sufficient to find a marked or extreme limitation in any functional domain. *See* 20 C.F.R. § 416.926a(e)(4)(i).  However "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain" indicates a marked limitation when "day-to-day functioning in domain-related activities is consistent with that score".  20 C.F.R. § 416.926a(e)(2)(iii).  Similarly, a test score that is more than three standard deviations or more

below indicates an extreme limitation if the "day-to-day functioning in domain-related activities is consistent with that score."

Based on these scores and other available evidence, the ALJ's decision was substantially justified. While M.J.B. scored more than three standard deviations below the composite reading comprehension score, this score alone is not enough to demonstrate the "worst" case such as that the ALJ should have concluded that M.J.B. had an extreme limitation. Rather, given that all of M.J.B.'s others scores were in the marked limitation or better range, the ALJ was justified in his determination that M.J.B. only had a marked limitation in acquiring and using information.

### 2.      Interacting and relating with others;

The Commissioner contends that although the evidence supports the claim that M.J.B. had some limitations in this domain, the ALJ did not err in finding that those limitations were less than marked. R. Doc. 11, Pg. 7.  Specifically, the Commissioner noted that the ALJ considered that M.J.B. had difficulty calming himself and expressing anger, threw tantrums when he did not get his way, and was aggressive to his sister. *Id.* However, the Commissioner argues that M.J.B. has friends and is able to get along with school teachers as well as take turns in conversation. *Id.*

In evaluating this domain, the Commissioner is to consider how well the Child "initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). School age children age six to twelve years should begin developing lasting friendships and understand how to work in groups to create projects and problem solve. 20 C.F.R. § 416.926a(i)(2)(iv). The child should be able to understand and tolerate another's point of view or differences. *Id.*  The child should also

be able to share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners readily understand. *Id.* Generally, the child should also appropriately respond to a variety of emotional and behavioral cues and must be able to: "participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully." 20 C.F.R. § 416.926a(i)(1)(iii).

The ALJ determined that M.J.B. had less than a marked limitation in interacting and relating with others. R. Doc. 9-2, Tr. 29. The ALJ noted that M.J.B. throws tantrums when he cannot get his way and is aggressive with his sister. He further noted that M.J.B.'s teacher noted significant problems calming himself and expressing his needs in a healthy way. *Id.* The ALJ also noted that M.J.B. was seeing a psychiatrist as well as a pediatrician. He further noted that medications was prescribed. *Id.*

Unhelpfully—perhaps frustratingly—the ALJ does not indicate why these factors demonstrate less than a marked limitation. The undersigned finds this problematic for a number of reasons. First, and perhaps most importantly, the ALJ stated he "assigned substantial weight to the State Agency medical consultant who completed the Disability Determination Explanation at Exhibit 2A. . .except as modified herein." R. Doc. 9-2, Tr. 27. However, the State Agency medical consultant determined that M.J.B. had a marked limitation in terms of interacting and relating with others, noting that M.J.B. has a behavior plan and difficulty calming down. R. Doc. 9-3, Tr. 51. The medical consultant also indicated that M.J.B. was diagnosed with ADHD and disruptive Behavior Disorder. *Id*. Unfortunately, the ALJ offers no indication in his determination why he

chose to modify the medical consultant's determination, especially given that he had assigned it substantial weight.

Second, the Court is left to infer what led to the ALJ's determination at this level. Here, based on the ALJ's reference to M.J.B.'s psychiatrist as well as pediatrician and medication, the ALJ appears to have been referring to the ALJ's determination that his conditions are "amenable to treatment." R. Doc. 9-2, Tr. 26. On the Court's review, however, the undersigned is unable to determine from the record before the Court any indication that M.J.B.'s medication and treatment have helped or aided the alleged symptoms or limitations in this domain.

In fact, based on the evidence provided in the record, the medication or compliance taking prescribed medication seem questionable. The undersigned notes that Byron Hammer, M.D., completed a comprehensive psychiatric assessment of M.J.B.. R. Doc. 9-7, Tr. 195. As a result of that examination, Dr. Hammer diagnosed M.J.B. with ADHD and Disruptive Behavior. *Id.* at Tr. 210. As part of that evaluation, Dr. Hammer noted that M.J.B. throws temper tantrums and kicks walls—resulting in holes in at least three walls—when he cannot get his way. Dr. Hammer also noted that M.J.B. was aggressive with his older sister. *Id.* at Tr. 195. Moreover, Dr. Hammer noted that M.J.B. had previously been suspended for fighting and "was put off the bus." *Id.* at Tr. 200. He noted that when M.J.B. played with other children "it ends up being bad." Moreover he noted that M.J.B.: blames others for mistakes; is often annoyed, spiteful, vindictive, and often angry; and steals significant items, including footballs and little change. *Id.* at Tr. 197.

Following that assessment, from November 2013 through February 2014, M.J.B.'s condition does not seem to improve even given treatment because M.J.B. was involved in two more instances of fighting at the school, two instances of willful disobedience, and one instance

of throwing rocks at the school. R. Doc. 9-6, Tr. 169. M.J.B.'s IEP assessment also noted that M.J.B. "act[s] out when he does not get his way."

In seeming support of the ALJ's decision, the Court notes that the record does indicate that Bailey told Dr. Hammer that his medication "slowed him down a little" but that it wears off by 1 p.m. R. Doc. 9-7, Tr. 205.

To the undersigned, while it is for the ALJ to resolve discrepancies and inconsistencies in the evidence, these facts border on a finding that the ALJ had no substantial evidence to justify his determination that because M.J.B. was seeing doctors and had been prescribed medicine his limitation in regards to interacting with others was less than marked. Indeed, this evidences strikes the undersigned as substance evidence that M.J.B.'s limitation *is* marked in that it is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). However, the undersigned does not believe that a reversal of the ALJ's determination is warranted at this time given the ambiguity with which the ALJ addressed his determination on this domain and how/why he disagreed with the determination. Rather, this matter should be remanded to the ALJ to clarify his opinion and to gather additional evidence in the area of interacting and relating to others as necessary to demonstrate the effect that his medication and treating doctors are having.

**V.      Recommendation**

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying M.J.B.'s Supplemental Security Income Benefits be **REVERSED** and **REMANDED** for additional consideration and evidence as outlined in this recommendation**.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within fourteen (14) days**

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, LA this 22nd day of December 2016

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**